**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

BRAUSER REAL ESTATE, LLC,         :

                          :    Civil Action No. 06-cv-01816 (SDW)

                          :

        Plaintiff,         :

                          :

v.                         :

                          :    **OPINION**

MEECORP CAPITAL MARKETS, LLC,  :

MICHAEL EDREI and DANIEL EDREI,  :

                          :

                          :    February 4, 2008

        Defendants.    :

_____  :

**WIGENTON, District Judge**

Before the Court is Meecorp Capital Markets, LLC ("Meecorp"), Michael Edrei and Daniel Edrei's (collectively "Defendants") motion for partial summary judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56(c). Defendants also filed a counterclaim ("Counterclaim") against plaintiff Brauser Real Estate, LLC ("Plaintiff") for breach of contract. Plaintiff filed opposition to the Motion and made a cross-motion for partial summary judgment ("Cross-Motion") requesting the following: (1) dismissal of Defendants' Counterclaim with prejudice; or, alternatively, (2) dismissal of the portion of Defendants' Counterclaim which seeks to recover a loan exit fee ("Exit Fee") and interest; and, alternatively, (3) leave to amend the Amended Complaint. The Court decides this matter upon having considered the parties' submissions and oral arguments on November 19, 2007. For the reasons discussed below, the Court grants Defendants' Motion and grants in part and denies in part Plaintiff's Cross-Motion.

1

**Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, as the parties have diversity of citizenship and the amount in controversy exceeds $75,000.

**Background**

Plaintiff is a Florida limited liability company with a principal place of business in Broward County, Florida.  (Pl.'s Opp'n. at 2.)  In 2003, Plaintiff sought financing for the development of a thirty-two acre commercial property in Broward County, Florida (the "Property").  Defendant Meecorp, a New Jersey limited liability company with a principal place of business in Fort Lee, New Jersey, is a lender that provides loans to commercial borrowers.  (Defs.' Mem. at 3.)  Plaintiff claims that Meecorp approached Plaintiff with an interest in providing financing.[1]  Plaintiff also claims that Meecorp's Managing Director, Michael Edrei ("M. Edrei"), and Managing Member/Director, Daniel Edrei ("D. Edrei") negotiated a loan with Plaintiff.

On or about October 10, 2003, Meecorp presented Plaintiff with a "Letter of Interest/Term Sheet" for a proposed "Construction/Bridge" revolving loan in the amount of $28,000,000 ("Letter of Interest").  The Letter of Interest required Plaintiff to provide Meecorp with a non-refundable application fee of $25,000 ("Application Fee")  in exchange for a draft loan commitment.  Plaintiff paid the Application Fee.[2]  (Pl.'s Opp'n at 4.)

---

[1]   Meecorp disagrees with this assertion, claiming that it was contacted by Plaintiff who had an interest in securing a commercial loan for the Property. (Defs.' Mem. at 3.)

[2]   "On or about October 31, 2003, Defendants issued a 'Revised Letter of Interest/Term Sheet' which decreased the proposed loan amount to eighteen million dollars ($18,000,000) but did not change anything regarding the requirement of a non-refundable . . . $25,000 fee before Meecorp would provide [Plaintiff] with a draft commitment." (Pl.'s Opp'n at 4.)

On or about November 18, 2003, Defendant Meecorp delivered a loan commitment ("Loan Commitment") to Plaintiff.[3]  Pursuant to the Loan Commitment, Meecorp would loan Plaintiff up to $20,000,000 with a first mortgage lien on the Property as collateral.  (Loan Commitment at 1-2.)  Additionally, a non-refundable commitment fee ("Commitment Fee") of three percent of the total $20,000,000 amount was required, with one percent to be paid upon signing, and the balance due at closing.[4]  (Pl.'s Opp'n at 4-5.)  In December 2003, Plaintiff executed the Loan Commitment and paid $200,000.  (Brauser Aff.¶ 8.)

On June 7, 2004, Defendants sent a letter requesting Plaintiff close the loan after over two months of postponement.  (Defs.' Mem. at 5.)  The loan did not close and Plaintiff subsequently requested that the $225,000 it paid in fees (i.e., $25,000 Application Fee plus $200,000 of the Commitment Fee) be refunded, claiming the Loan Commitment was illegal.  (Pl.'s Am. Compl. ¶¶ 52, 53.)  On November 30, 2005, after Meecorp refused to refund the fees, Plaintiff filed suit in the Circuit Court of the Seventeenth Judicial Circuit in Florida.  Plaintiff asserted the following five counts against Defendants: violation of the Loan Broker Act, Fla. Stat. §687.14 *et seq.* ("Florida's LBA") (Count I); restitution against Meecorp (Count II); unjust enrichment against Meecorp (Count III); rescission (Count IV); and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* ("FDUTPA") (Count V).  (*See* Pl.'s Compl.)

On December 27, 2005, Defendants removed the case to the United States District Court for

---

[3]   Defendants argue that it is an "undisputed fact" that the negotiation and preparation of the Letter of Interest and the Loan Commitment took place in New Jersey.  (Defs.' Reply Br. at 3-4; M. Edrei Second Aff. ¶5; and D. Edrei Aff. ¶11.)  However, Plaintiff claims that Defendants came to Broward County, Florida to negotiate the terms of the Loan Commitment. (Pl.'s Opp'n at 4.)

[4]   Meecorp required only $200,000 of the Commitment Fee at signing and the remaining $400,000 at closing, for a total of $600,000.  (Loan Commitment at 6.)

the Southern District of Florida.  (Defs.' Mot. to Transfer.)  On March 9, 2006, Plaintiff amended

its Complaint to add the following additional counts against Defendants: violation of Chapter 494,

Fla. Stat. (requiring mortgage brokers to be licensed in the State of Florida ) (Count VI); and

violation of Chapter 494, Fla. Stat. (requiring mortgage lenders to be licensed in the State of Florida)

(Count VII). (Pl.'s Am. Compl. at 12-13.)  In response, Defendants filed the Counterclaim on March

23, 2006, asserting Plaintiff was in breach of the contract.[5]  (Defs.' Answer at 11.)  The case was

transferred in its entirety to this Court on April 11, 2006 because, as  the Florida Court held, the

"claims fell within the broad language" of the Loan Commitment's New Jersey forum selection

clause.  (Order for Transfer at 6.)  On April 30, 2007, Defendants filed the Motion, seeking to

dismiss Plaintiff's Amended Complaint with prejudice.


**Legal Standard**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant,

and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary

will not be counted." *Id.*  The moving party must show that if the evidentiary material of record were

reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to

---

[5]    Defendants Counterclaim for breach of contract is premised on Plaintiff's alleged failure to comply with the
terms of the Loan Commitment.  (Defs.' Answer to Am. Compl. at 11.)  Defendants claim they suffered damages,
including the following: (1) Exit Fee of $1.8 million; (2) one year of interest totaling $2.6 million; and (3)$400,000
unpaid balance of the Commitment Fee. (Defs.' Answer to Am. Compl. at 11; Pl.'s Opp'n at 26.)

carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter; rather, the court must determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

**Discussion**

The parties disagree as to the validity and enforcement of the Loan Commitment. To resolve this dispute, the Court must first address the choice-of-law issue and determine the validity of the Loan Commitment as an enforceable contract. The Court will then discuss whether the Loan Commitment supersedes previous documents signed by the parties, specifically the Letter of Interest. Next, the Court will analyze Plaintiff's claims for rescission, restitution and unjust enrichment in association with the Loan Commitment and Defendants' Counterclaim. Finally, the Court will address Plaintiff's assertion of a claim under the New Jersey Consumer Fraud Act, or in the alternative, Plaintiff's request to amend the Amended Complaint.

*A. Contract Validity and Governing Law*

Defendants assert that pursuant to the Loan Commitment, the parties chose New Jersey law to govern their contract and that selection should be enforced. (Loan Commitment at 5; Defs.' Reply Br. at 17.) Defendants argue that because New Jersey law, not Florida law, applies to the Loan

Commitment, "the claims set forth in [Plaintiff's] complaint, which are based solely on Florida statutes, fail as a matter of law." (Defs.' Mem. at 2.)  Plaintiff argues that despite the New Jersey choice-of-law provision, the illegality and unenforceability of the Loan Commitment and Letter of Interest should be assessed pursuant to Florida law. (Pl.'s Opp'n at 11-18.)  For the reasons set forth below, the Court determines that New Jersey law governs the contract and related non-contract issues in this matter.

        *1.      Contract Language*

The Court will enforce the terms of a contract that is unambiguous on its face. *Statewide Realty Co. v. Fidelty Mgmt. & Research Co., Inc.*, 259 N.J. Super. 59, 68 (1992).  Further, courts in this jurisdiction have repeatedly honored choice-of-law provisions that explicitly state a particular governing law without regard to conflicts of law.  *See Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 159 (3d Cir. 1999).

In this instance, the parties clearly selected New Jersey law to govern the Loan Commitment. Specifically, the Loan Commitment provides, "[t]his commitment will be governed by and construed in accordance with *the laws of the State of New Jersey* without regard to the principles of conflict of laws thereof." (Loan Commitment at 5) (emphais added).  Thus, the parties' intention that New Jersey law would apply to the executed Loan Commitment is clear and unambiguous.  As Defendants correctly assert, "[t]he language throughout the Loan Commitment unambiguously reveals the parties mutual intent to have New Jersey law and only New Jersey law, apply to the subject claims." (Defs.' Reply Br. at 1.)  Therefore, based on the contract language alone, and without engaging in a choice-of-law analysis, New Jersey law would govern.

2.      *Choice-of-Law Analysis*

Plaintiff claims that Defendants violated two specific Florida Statutes: (1) the Mortgage Brokerage Act, Chapter 494, Fla. Stat., requiring mortgage brokers and mortgage lenders to be licensed in the State of Florida and, (2) LBA § 687.14, *et seq.*, prohibiting any loan broker from collecting advance fees from a borrower to provide services.  (Pl.'s Am. Compl. at 4, 10, 12.) Because of the Loan Commitment's alleged illegality, Plaintiff urges the Court to engage in a choice-of-law analysis pursuant to Restatement (Second) of Conflict of Laws § 202 (1971) ("Restatement").[6]   Under this analysis, Plaintiff argues that the Loan Commitment is illegal and therefore cannot be enforced as Defendants engaged in unlicensed mortgage brokerage and prohibited lending and collection of advance fees under Florida law.  (Pl.'s Opp'n at 10-17.)  New Jersey law does not have similar statutes for licensing mortgage lenders and prohibiting the collection of advanced fees.

Defendants maintain that "even if the Florida statutes were violated by Meecorp, the New Jersey choice-of-law provisions [govern] and the Loan Commitment should still be enforced." (Defs.' Reply Br. at 17; Defs.' Supp. at 1-4, Ex. A.)  Thus, Defendants contest a section 202 analysis by the Court, asserting that "when the parties have made a choice of law, even if there is an issue of illegality, the court is to look to [section] 187 of the [Restatement]."  For the reasons set forth below, the Court agrees that  section 187 of the Restatement is the appropriate choice-of-law analysis in the instant matter.

In determining whether a choice-of-law provision in a contract is enforceable, federal courts

---

[6]    Section 202 provides: "(1) The effect of illegality upon a contract is determined by the law selected by application of the rules of §§ 187-188. (2) When performance is illegal in the place of performance, the contract will *usually* be denied enforcement."  Restatement (Second) of Conflict of Laws § 202 (emphasis added).

sitting in diversity apply the choice-of-law rules of the forum state.  *Homa v. Am. Express Co.*, 496 F. Supp. 2d 440, 447 (D.N.J. 2007).  New Jersey generally gives effect to contracting parties' choice-of-law clauses unless they conflict with New Jersey public policy.  *See Kalman Floor Co., Inc. v. Joseph Muscarelle, Inc.*, 196 N.J. Super 481 (1984); *Citibank v. Errico*, 251 N.J. Super. 236 (1991).  In this instance, giving effect to the choice-of-law provision contained in the Loan Commitment would not conflict with the public policy of New Jersey.

New Jersey's choice-of-law rules is similar to those set forth in section 187 of the Restatement.  *Homa v. Am. Express Co.*, 496 F. Supp. 2d at 447.  A choice-of-law provision will therefore govern unless

> "(1) . . . the state chosen has no substantial relationship to the parties or the transaction [and there is no other reasonable basis for the parties' choice]; or (2) application of the law chosen would conflict with a *fundamental public policy* of a state having a *greater interest* in a determination of a particular issue and [the law] of such state would be applicable in the absence of the choice of law provision under the governmental-interest analysis."

*Id.* (citing *Prudential Ins. Col. of Am. v. Nelson*, 11 F. Supp. 2d 572, 578 (D.N.J. 1998); Restatement (Second) of Conflict of Law § 187(2)(a) (emphasis added).

The Court is satisfied that New Jersey, the state expressly chosen to govern the Loan Commitment, has a substantial relationship to the parties or the transaction.  First, Defendant is a New Jersey limited liability company with a principal place of business in Fort Lee, New Jersey. (Defs.' Mem. at 3.)  Second, the parties' intention that New Jersey law apply to the executed Loan Commitment is clear and unambiguous.  As mentioned, the Loan Commitment provides that it "will be governed by and construed in accordance with the laws of the State of New Jersey without regard to the principles of conflict of laws thereof."  (Loan Commitment at 5.)  Further, the language in

8

the Loan Commitment shows the parties' mutual intent to have New Jersey law apply to the subject claims. (Defs.' Reply Br. at 1.) Finally, although it is disputed whether Defendants went to Florida to negotiate the terms of the Loan Commitment, the parties' submissions do show that the Loan Commitment was prepared in New Jersey and the money to be loaned would come from New Jersey. (Pl.'s Statement of Facts at 2.) Thus, the first prong of the section 187 analysis is satisfied and the New Jersey choice-of-law provision in the Loan Commitment cannot be rendered unenforceable on the ground that New Jersey has no substantial relationship in this matter.

Further, the New Jersey choice-of-law provision in the Loan Commitment can be rendered unenforceable under the second prong of the section 187 analysis. The second prong requires the Court to determine whether the law chosen, New Jersey, conflicts with "a fundamental public policy of a state having a *greater interest* in a determination of a particular issue and [whether the law] of such state would be applicable in the absence of the choice of law provision under the governmental-interest analysis." *Homa*, 496 F. Supp. at 447 (emphasis added); *see also* Restatement (Second) of Conflict of Laws § 187 (2)(b). Florida indeed has an interest in this matter, as the Plaintiff is in Florida and the subject Property or collateral for the loan is in Florida. However, the Court does not find Florida to have a greater interest or materially greater interest than New Jersey. As stated, Meecorp is a New Jersey limited liability company and has its principal place of business in New Jersey, the Loan Commitment was generated in New Jersey, the funds would have been generated from New Jersey and the parties intended for New Jersey law to govern the Loan Commitment as clearly and unambiguously set forth in the Loan Commitment.

Even assuming Florida had a greater interest in this matter, this Court cannot find that "application of the law of the chosen state [New Jersey] would be contrary to a *fundamental policy*

of a state which has a *materially greater interest*."  Restatement (Second) of Conflicts of Law §

187(2)(b) (emphasis added).  Although Defendants' actions appear to have been in violation of

Florida law, Plaintiff has failed to show that such conduct would render the Loan Commitment

unenforceable or impact the validity of the negotiated loan if it had closed.  Even the basis of

Plaintiff's argument, the Florida Mortgage Brokerage Act, specifically provides that "[f]ailure to

comply with provisions of ss. 494.001-494.0077 *does not affect the validity or enforceability of any*

*mortgage loan*."  Mortgage Brokerage Act, Chapter 494.0022, Fla. Stat. (emphasis added).[7]

As New Jersey law was selected by the parties, New Jersey has a substantial relationship

to the parties and the transaction, and because the application of New Jersey law is in accord with

the requirements of section 187(2) of the Restatement, the Court finds that the New Jersey choice-

of-law provision should be enforced and that the Loan Commitment is a valid and enforceable

contract.  Given that the New Jersey choice-of-law provision in the Loan Commitment is valid and

enforceable, the Court need not engage in a section 202 analysis as urged by Plaintiff.  *See*

Restatement (Second) of Conflicts of Law § 202 (1) ("The effect of illegality upon a contract is

determined by the law selected *by application of the rules of §§ 187-188.*") (emphasis added); *see*

*also* Restatement (Second) of Conflicts of Law § 202 cmt. a ("Under the rule of this Section,

questions involving the effect of illegality upon a contract are *determined by the law chosen by the*

---

[7]   In fact, the Florida District Court has found in favor of Defendant Meecorp on the exact claims in *Morris Development Group, LLC v. Meecorp Capital Markets, LLC*, No. 8-03-cv-1431-T-26TGW, slip op. 11 (Sept. 8, 2004).  In *Morris Development*, the court held that, "[i]t simply cannot be said that the policy against the collection of an advanced fee by a 'loan broker' as defined in section 687.14(4) is so fundamental to Florida's legal system that it warrants the status of an exception to one's freedom to contract."  *Id.* at 11 (citing *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306, 311 (Fla. 2000) (discussing factors in determining whether a public policy exception to the right to contract should be recognized in Florida)).

*parties, if they have made an effective choice.*") (emphasis added).[8] As such, Plaintiff's Florida-based claims in Counts I, V, VI and VII are dismissed as a matter of law.[9] The Court's application of New Jersey law to the remaining counts is discussed below.

## B.  The Loan Commitment Supersedes All Previous Documents

As the Loan Commitment is a valid contract, its terms should be enforced unless shown otherwise.  *See Atlantic City Racing Ass'n v. Sonic Financial Corp.*, 90 F. Supp. 2d 497, 506 (D.N.J. 2000)  ("If the terms of a contract are clear the court will enforce them as written."). Defendants argue that the Loan Commitment contains clear language sufficient to supersede all prior documents, including the Letter of Interest.  (Defs.' Reply Br. at 31.)  Specifically, Defendants contend that the Loan Commitment's choice-of-law provision specifies the application of New Jersey law and should apply to the terms of the Letter of Interest because the two documents "are interrelated and should not be construed under separate law."  (Defs.' Reply Br. at 31.)  Plaintiff argues that "[t]here is no choice of law provision in either the original or the revised Letter of Interest . . . [t]hus, there is no basis for finding that New Jersey Law is applicable to the Letters of Interest."[10]  (Pl.'s Opp'n at 6.)

---

[8]  Further, even if the Court undertook a section 202 analysis the following is true: 1) performance in Florida may be illegal, but even under Florida law the contract would not be void and unenforceable.  *See Morris Development*, Case No. 8-03-cv-1431-T-26TGW at 11; and 2) the section 202 analysis would still incorporate section 187.

[9]  In its Amended Complaint, Plaintiff asserts Counts I, V, VI and VII against Meecorp and M. Edrei and D. Edrei, acting in their individual capacities as agents of Meecorp.  (*See generally* Pl.'s Am. Compl.)  Plaintiff claims to have alleged "sufficient facts to support a finding that both individuals were acting on behalf of Meecorp for the purpose of soliciting a borrower and they may have individual liability under the Florida Loan Broker Act."  (Pl.'s Br. Opp'n at 10.)  The Court has determined the Loan Commitment to be valid and enforceable under New Jersey law, and consequently dismissed Counts I, V, VI and VII.  As to Defendants M. Edrei and D. Edrei's individual liability, these individuals acted in their official capacities and New Jersey law would apply to the claims against them. Plaintiff's claims against these individual Defendants are based on Florida law. (*See* Pl.'s Br. Opp'n at 10.)  As such, the claims against the individual Defendants cannot survive upon application of New Jersey law.

[10]  Plaintiff's argument relies on the decision in *Morris Development*, in which the court found that the Letter of Interest did not contain a choice-of-law provision to govern the payment of the advanced fee.  *Morris Development*, Case No. 8-03-cv-1431-T-26TGW at 3.

Generally, where not inconsistent, two interrelated documents for the same transaction are interpreted together. "An integrated writing must be construed as a whole and all writings forming a part of the same transaction are interpreted together." *Graybar Elec. Co. v. Continental Cas. Co.*, 50 N.J. Super. 289, 294 (App. Div. 1958) (citations omitted); *see also Curtis-Warner Corp. v. Thirkettle*, 99 N.J. Eq. 806, 817 (N.J. Ch. 1926) (citations omitted) (noting that an "executed contract supersedes all prior negotiations and agreements where the last contract covers the whole subject embraced in the prior one").

In the instant matter, the Loan Commitment clearly sets forth integration language to support an understanding that its terms supersede all prior documents relating to the loan. As the opening paragraph of the Loan Commitment states, "This supersedes all previous communications and correspondence." (Loan Commitment at 1.) The signature page also provides, in the Complete Agreement clause, "This Commitment . . . supersedes all prior proposals, negotiations, agreements, and understanding relating to such subject matter." (Loan Commitment, Sched. B. ¶ 17); *See also* Williston on Contracts § 33:21 (4th ed.) (2007) (noting that the presence of an integration or merger clause tends to "establish the intent of the parties that the writing shall be an integration of their agreement").

Additionally, the Letter of Interest itself states "[i]n no way should this be considered a firm loan commitment" and, referencing the Application Fee, states that "unless the terms contained herein are not contained in the draft commitment," the fee is non-refundable. (Letter of Interest at 1-2.) This language indicates that by executing the Letter of Interest, the parties ultimately intended the terms of the Letter of Interest to be integrated with those in the Loan Commitment.

For the reasons discussed above, the Court concludes that the Loan Commitment supersedes

the Letter of Interest and New Jersey law governs all claims arising from the Loan Commitment. Furthermore, the choice-of-law provision in the Loan Commitment can govern the asserted claims arising out of the agreement, including non-contract claims.[11]  *See Crescent Intern., Inc. v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir. 1988) (discussing the applicability of a forum selection and choice-of-law clause to related non-contract claims).

## C. Plaintiff's Claims for Rescission, Unjust Enrichment and Restitution

As the Letter of Interest is superseded by the Loan Commitment, the Loan Commitment's terms govern the transaction.  Plaintiff paid Defendants a $25,000 Application Fee under the Letter of Interest and $200,000 of the Commitment Fee pursuant to the Loan Commitment.  (Pl.'s Am. Compl. ¶¶ 10, 15.)  Plaintiff contends that, based on Florida law, the Letter of Interest and Loan Commitment were "illegal contracts."  (Pl.'s Am. Compl. ¶¶ 56, 60.)  As such, Plaintiff filed a claim for rescission, arguing the contracts are void and unenforceable.  (Pl.'s Am. Compl. ¶ 60.) Further, Plaintiff asserts that even under New Jersey law, Meecorp has been unjustly enriched and Plaintiff is entitled to restitution for the fees paid.  (Pl.'s Am. Compl. ¶¶ 49, 51.)  The Court will address each of these claims below.

### 1.    Rescission (Count IV)

Rescission is the unilateral unmaking of a contract due to one party's material breach of the contract.  *See Young Travelers Day Camps, Inc. v. Felsen*, 118 N.J. Super. 304, 310 (D.N.J. 1972). New Jersey courts have long held that rescission is an equitable remedy and should not be exercised when there is an adequate remedy at law.  *Walter v. Holiday Inns, Inc.*, 784 F.Supp. 1159, 1166 (D.N.J. 1992) (citations omitted).  Allowing rescission of a contract is discretionary and only

---

[11]    Plaintiff assert that the contractual choice-of-law provision in the Loan Commitment does not apply to Counts I, V, VI and VII as they are not contract claims.  (Pl.'s Opp'n at 23.)  The Court finds that these issues arise from the Loan Commitment and are intimately related to the contract.

available in limited circumstances where there is either consent, "original invalidity, fraud, failure

of consideration or a material breach or default." *Hilton Hotels Corp. v. Piper Co.*, 214 N.J. Super.

328, 336 (Ch. Div. 1986) (citations omitted). "A court must be able to return the parties to the

'ground upon which they originally stood'" in order to impose rescission. *Id.* at 336 (citations

omitted).

As already established by the Court, the Loan Commitment is a valid and enforceable

contract and supersedes the Letter of Interest. Plaintiff has not indicated Defendants' failure to meet

a material obligation specified in the Loan Commitment. Additionally, if the loan had closed, the

mortgage loan would have been enforceable. As such, Plaintiff has not established a claim for

rescission, Count IV, is dismissed.

### 2.    *Unjust Enrichment (Count III) and Restitution (Count II)*

Plaintiff bases its claims for unjust enrichment and restitution on two alternate grounds: (1)

the fees were acquired illegally and through illegal documents under Florida law; or (2) if New

Jersey law applies, the loan did not close and was never funded. (Pl.'s Opp'n at 21.) As such,

Plaintiff argues that it should be refunded the $25,000 Application Fee and $200,000 of

Commitment Fee as restitution either under Florida or New Jersey law. (Pl.'s Am. Compl. ¶¶ 49,

51.)

A claim for "unjust enrichment rests on the equitable principle that a person shall not be

allowed to enrich himself unjustly at the expense of another." *Callano v. Oakwood Park Homes

Corp.*, 91 N.J. Super. 105, 108 (App. Div. 1966). To establish an unjust enrichment claim, a

plaintiff must show that "it expected remuneration from the defendant at the time it performed or

conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond

its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994), *aff'd*, 186 N.J. 46 (2006) (citations omitted).  Thus, it is the plaintiff's "conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998).  One receiving an unjust benefit is liable to make restitution to the innocent party.  *See generally id.*

Plaintiff's claims of unjust enrichment and restitution under Florida law fail as a matter of law.[12]  As discussed, New Jersey law governs the Loan Commitment and the Letter of Interest. Therefore, the Court will proceed with the unjust enrichment and restitution analysis solely under New Jersey law.

The parties agree that under New Jersey law, no statute exists prohibiting Defendants collection of an advance payment in the form of an Application or Commitment Fee.  (Defs.' Mem. at 5; Pl.'s Opp'n at 11.)  However, Plaintiff contends that "[u]nder New Jersey law, parties to a frustrated contract may claim relief in the form of restitution to the extent that their performance under the contract has benefitted the other."  (Pl.'s Opp'n at 22.)  Plaintiff therefore bases its argument that Defendants were unjustly enriched on the fact that the loan did not close, Plaintiff did not receive any benefit from its payment of fees, and claims that as a result, Plaintiff should be entitled to restitution.  (Pl.'s Opp'n at 21.)

Plaintiff's assertions fail to satisfy a claim for unjust enrichment and restitution because the $225,000 in collected fees were earned by  and specifically contracted for by the Defendants at the

---

[12]   Plaintiff relies heavily on the decision in *Morris Development*.  In *Morris Development*, the Florida District Court held that New Jersey law did not apply to the letter of interest because: (1) the letter did not contain a choice-of-law forum; (2) the loan commitment, by its terms, did not supersede the letter of interest; and (3) the advance fee (application fee) of $20,000, was paid before the loan commitment issued. (Pl.'s Opp'n at 7-8)*; Morris Development*, No. 8-03-cv-1431-T-26TGW at 3.  As such, the *Morris Development* court found the advance fee in violation of Florida law and denied Defendants' request for summary judgment on these advanced fees of $20,000. *Id.*

time the Letter of Interest and the Loan Commitment were executed, respectively.  (*See* Letter of Interest at 1-2; Loan Commitment at 4, 6.)  As such, Plaintiff cannot maintain that it bestowed a benefit on Defendants in the form of the Application Fee and the $200,000 of the Commitment Fee, or that retention of such benefit is unjust because the loan never closed.  (Pl.'s Opp'n at 21.)  Even though the parties appear to disagree on the reason the loan did not close,[13] Defendants performed under the Letter of Interest by providing the Loan Commitment and were prepared to close the loan.  The Letter of Interest clearly provides that the Application Fee of $25,000 was for the preparation of a Loan Commitment draft, which Defendants provided.  (Letter of Interest at 1-2.)  Defendants' performance of the action, for which Plaintiff had paid and contracted, defeats Plaintiff's claim for unjust enrichment and restitution of the Application Fee.

Plaintiff's execution of, and payment pursuant to, the Loan Commitment is a clear indication of its agreement to the contract's terms and its intent to proceed with the loan.  Defendants state that they were prepared to perform under the Loan Commitment and required $200,000 at the signing of the Loan Commitment.  Therefore, Plaintiff did not confer a benefit on the Defendants that exceeded Defendants' rights under the contracts and is not entitled to restitution for the fees paid ($225,000).  As such, the Court finds that Defendants were not unjustly enriched by either the Application Fee of $25,000 or the Commitment Fee of $200,000.  Accordingly, Counts II and III are dismissed.

---

[13]  Defendants argue that they did not issue the loan because Plaintiff's failure to reach an agreement with the seller of the Property and obtain title rendered them unable to meet their obligations under the Loan Commitment.  (Defs.' Reply Br. at 7; M. Edrei Second Aff. ¶ 8; Brauser Aff. ¶ 9.)  During oral argument on November 19, 2007, Plaintiff informed the Court that while it had in fact secured the Property (Tr.10:20-2), it never closed the Loan Commitment because the loan was procured through illegal means and illegal documents (Tr. 12:6-13) and the amount of the loan kept changing depending on the appraised value of the Property.  (Tr. 11:1-6.)  The Court notes that the appraisal value of the Property was determined by the Defendants. (Tr. 11:7-8.)

D. *Defendants' Counterclaim for Breach of Contract*[14]

Defendants filed a Counterclaim for breach of contract seeking to recover the following: (1) the Exit Fee of $1.8 million; (2) one year's prepaid interest of $2.6 million; and (3) the balance of the unpaid portion of the Commitment Fee (i.e., $400,000).  (Defs.' Answer to Am. Compl. at 11.) Plaintiff filed a Cross-Motion seeking to dismiss "(I) . . . [D]efendants' Counterclaim in its entirety; (ii) or, alternatively, dismissing that portion of [D]efendants' Counterclaim which seeks to recover a loan 'Exit Fee' of $1.8 million and one year's prepaid interest of $2.6 million on a loan that was never made or funded" and/or leave to amend the Amended Complaint.  (Pl.'s Opp'n at 1.)

The issues of fact raised are not material and do not preclude summary judgment in this matter. As the Loan Commitment is a valid contract, the Court will strictly construe the language of the Loan Commitment and decide whether Defendants' Counterclaim should be dismissed as a matter of law.  For the following reasons, the Court grants Plaintiff's motion for partial summary judgment to dismiss Defendants' Counterclaim as to the Exit Fee of $1.8 million, the one-year prepaid interest of $2.6 million; however, Plaintiff is obligated to pay Defendants the remaining balance of $400,000 for the Commitment Fee.

"The interpretation of a contract is a matter of law for the court." *Atlantic City Racing Ass'n v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 506 (D.N.J. 2000) (citing *Fastenberg v. Prudential Ins. Co. of Amer.*, 309 N.J. Super. 415 (App. Div. 1998).  "The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them." *Id.* (quoting *Karl's Sales and Service, Inc. v. Gimbel Bros., Inc.*, 592 A.2d 647, 650 (App. Div. 1991)).  Where the terms of a contract are clear, "'the court must enforce those terms as written.'" *Id.* (citation omitted).

---

[14]   Defendants also have a third-party claim against Gerald Brauser for liability as a guarantor. (*See* Defs' Answer at 11.)

17

"Where ambiguities appear in the contract, they are to be strictly construed against the drafter."

*See id.*  Accordingly, "the court cannot undertake to rewrite a contract 'merely because one might conclude that it [would] have been functionally desirable to draft it differently.'" *Id.* (citation omitted).

Defendants claim that its "entitlement to an exit fee and pre-paid interest are clearly described in the [Loan Commitment].  The damages as alleged are proper." (Defs.' Reply Br. at 34.)  The Court, however, in applying the aforesaid principles of contract construction and interpretation, disagrees with this contention.  With respect to an Exit Fee, the Loan Commitment merely states, "Nine percent (9%) of the Loan Amount.  To be included in the Loan Amount and paid at the maturity of the Loan." (Loan Commitment at 3.)  With respect to prepaid interest, the Loan Commitment provides, "Interest at a rate of Thirteen percent (13%) per annum during the first year, prepaid in advance . . . ." (Loan Commitment at 3.)  However, it is ambiguous whether Meecorp, as the drafter, intended for the Exit Fee and one year's prepaid interest to be due upon signing of the Loan Commitment, or due upon the actual closing of the loan.  Such ambiguity will be construed against Defendants.

Meecorp, a sophisticated entity, drafted the Loan Commitment and could easily have included remedial language with respect to the Exit Fee and prepaid interest in the event the loan did not close.  Defendants did not include such language and the Court will not reconstruct a better agreement for Defendants.[15]  As such, the portion of Defendants' Counterclaim seeking  the Exit Fee and prepaid interest fails as a matter of law.  Further, in the interest of equity, as the loan did

---

[15]   The Court also notes that the Loan Commitment's limitation of damages clause does not provide much instruction on whether the fees in question are due upon signing, or due upon closing.  (*See* Loan Commitment at 6.)  The limitations of damages applies solely to Defendants' liability in the event the loan does not close; the agreement generally, and the limitations on damages clause specifically, does not provide for Plaintiff's continued liabilities or obligations in the event the loan does not close.

not close, the Court will not force Plaintiff to pay for services that Defendants did not have to provide.  Accordingly, the Court finds that the portion of Defendants' Counterclaim regarding the Exit Fee and prepaid interest will be dismissed.

With respect to the portion of Defendants' Counterclaim seeking the remaining $400,000 in Commitment Fee, Defendants argue that the $600,000 Commitment Fee was required for Plaintiff to effectuate the Loan Commitment, with $200,000 due upon its signing.  (Loan Commitment at 4.)  Again, the Court will review the language of the Loan Commitment to determine if additional fees of $400,000 are owed to Meecorp.

The Acceptance of Commitment clause states,

> "The commitment and all of its terms and conditions will become effective only upon delivery to this office of a signed copy of this commitment duly accepted by the Borrower, accompanied with the commitment fee installment in the amount of Six Hundred Thousand Dollars ($600,000) which is *non-refundable and earned* for, among other things, the commitment to provide funds and due diligence expenses."

(Loan Commitment at 4) (emphasis added).  The payment of the Commitment Fee for a total of $600,000 was not conditioned on the loan closing, rather the remaining $400,000 was *deferred* to the time of closing.  Although the closing did not take place, the $400,000 in Commitment Fee was already earned upon the signing of the Loan Commitment.  Therefore, the Court finds that Plaintiff is obligated to pay the remaining $400,000 balance of the Commitment Fee.

No additional costs or attorneys' fees will be awarded in this matter.

### E. Plaintiff's New Jersey Consumer Fraud Act Claim and Request to Amend Complaint

Plaintiff argues that it has asserted a claim under the New Jersey Consumer Fraud Act

19

("NJCFA") in Count V of its Amended Complaint.  (Pl.'s Opp'n at 25).[16]  Plaintiff further argues that if this Court questions whether Plaintiff has adequately stated a claim for relief under the NJCFA in its Amended Complaint, it should grant Plaintiff leave to amend its pleading in order to properly assert such a claim.[17]  (Pl.'s Opp'n at 25.)

To state a claim under the NJCFA, Plaintiff must allege the following: (1) violation of the NJCFA by Defendants' unlawful conduct; (2) an ascertainable loss on the part of the Plaintiff; and (3) a causal relationship between Defendants' unlawful conduct and Plaintiff's ascertainable loss. *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12 (App. Div. 2003); *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 125 (D.N.J. 2003).  Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  A general presumption exists in favor of allowing a party to amend its pleadings.  *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984), *cert. denied*, 469 U.S. 871 (1984).  Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice.  *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir.1984), *cert. denied*, 469 U.S. 1122 (1985).

In the instant matter, Plaintiff has failed to state a claim under the NJCFA.  Plaintiff couches the basis of its claim for fraud, unconscionability and ascertainable loss on actions deemed illegal under Florida statutes.[18]  (Pl.'s Opp'n at 25.)   Plaintiff has not identified a New Jersey statute

---

[16]    The Court notes that contrary to Plaintiff's belief that it has asserted a claim under the NJCFA in Count V of its Amended Complaint, Count V only asserts a violation of Fla. Stat. §501.20, *et seq*. (Pl.'s Am. Compl., ¶¶62- 76.) Furthermore, this Court does not find any reference to the NJCFA in Plaintiff's Amended Complaint, and will not infer that Plaintiff intended to state such a claim without having clearly done so.

[17]    Plaintiff did not make a formal motion to amend and did not provide a proposed amended complaint.
[18]    Plaintiff argues that it suffered an ascertainable loss of $225,000 based on Defendants' alleged violation of Florida statutes for unconscionable practices and the collection of advance fees.

requiring mortgage lenders and/or brokers to be licensed, or a prohibition on the collection of advance fees in a commercial loan.  (Pl.'s Am. Compl. ¶¶ 62-76.)  As such, Plaintiff has not alleged unlawful conduct under New Jersey law or shown that, given leave to amend, it could state such a claim.  Plaintiff has not provided a proposed amendment for the amended complaint and the informally proposed amendment, articulated in Plaintiff's papers, would be futile.  For these reasons, Count V is dismissed and leave to amend the Amended Complaint is denied.


**Conclusion**

For the foregoing reasons, the Court grants Defendants' Motion, and grants in part and denies in part Plaintiff's Cross-Motion.

s/Susan D. Wigenton, U.S.D.J.


cc: Madeline Cox Arleo, U.S.M.J.