**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____

MEECORP CAPITAL MARKETS, LLC., :
MICHAEL EDREI, and DANIEL EDREI, :   Civ. Action No. 06-1816 (SDW)
:
:
Third-Party Plaintiffs, :
:
v. :   **OPINION**
:
:
GERALD BRAUSER, Individually, :
:
:
Third-Party Defendant. :   August 3, 2009
_____:

**Wigenton**, District Judge

    Before this Court is Third-Party Plaintiffs', Meecorp Capital Markets, LLC. ("Meecorp"), Michael Edrei ("M. Edrei"), and Daniel Edrei ("D. Edrei") (collectively "Defendants" or "Third-Party Plaintiffs") Counterclaim ("Counterclaim") against Third-Party Defendant, Gerald Brauser ("Third-Party Defendant" or "Brauser") for breach of contract. Specifically, there are two issues before this Court: (1) whether Brauser is individually liable for the entire Loan Commitment Fee; and (2) whether Brauser's liability is discharged because of unilateral changes made by Meecorp to "Schedule C." This Court decides this matter upon having considered the bench trial on May 17 and 18, 2009 and the parties' June 24, 2009 submissions. For the reasons discussed below, this Court finds Brauser individually liable for the entire balance of the Loan Commitment Fee.

**I.      Background**

Plaintiff, Brauser Real Estate, LLC ("BRE") is a limited liability company with its principal place of business in Broward County, Florida. On September 25, 2003, Brauser executed a Contract of Sale to purchase a thirty-two acre commercial property (the "Property") in Broward County, Florida. Meecorp, a limited liability company with its principal place of business in Fort Lee, New Jersey, provides loans to commercial borrowers.

On or about October 10, 2003, Meecorp presented Brauser with a "Letter of Interest/Term Sheet" ("Letter of Interest") for a proposed "Construction/Bridge" revolving loan in the amount of $28,000,000. The Letter of Interest required Plaintiff to provide Meecorp with a non-refundable application fee of $25,000 ("Application Fee") in exchange for a "draft" Loan Commitment. Brauser paid the Application Fee.[1]

On October 21, 2003, Meecorp prepared the first draft of the Loan Commitment ("Draft #1") to provide funding for the purchase and development of the Property. (Trial Ex. M-5) Draft #1 anticipated a loan of $28,000,000 and a Loan Commitment Fee of $840,000. (*Id.*) Schedule C of the first draft states, in pertinent part:

> Borrower will provide evidence of sufficient availability of cash to service the Loan during the years following the first anniversary.
>
> Personal Properties related to the Real Estate Collateral –
> All but not limited to: (a) assignments, permissions, subordination agreements, grants, benefits of any kind, from and to local, State and Federal government in connection with the Real Estate and Borrower, or any other development and improvements on the Property. All permits have been granted, and in place, by all the

---

[1] The date Brauser paid said funds is unknown to this Court.

> appropriate authorities in respect to the development. (b) Assignment of all sale agreements, (c) All other tangible and intangible assets, including but not limited to purchase and sale agreements, leases, architectural and engineering plans, surveys and studies, permits, licenses, sales deposits, accounts receivable, inventory, work-in-process, trade marks, etc; (d) A pledge of all Borrower's stock, partnership interests or members' interests, (e) Cash Management Account; (f) "On-time, On-Budget" performance guaranty issued by an S&P "AA" rated financial institution and in form and substance acceptable to Meecorp in its sole discretion; (g) evidence of construction agreement with qualified General Contractor acceptable to Lender.

(Trial Ex. M-10). Frank Graziadei, Esq. ("Graziadei") negotiated the terms of Draft #1 on behalf of Brauser and BRE. On November 6, 2003, Draft #1 was faxed from Graziadei to Brauser. On November 13, 2003, Graziadei faxed a copy of Draft #1 to D. Edrei, director and principal of Meecorp Capital Markets, and Chris Salmonson ("Salmonson"), Outdoor Digital, LLC.'s representative.[2]

In mid-November 2003, John P. Wilkes, Esq. ("Wilkes") began negotiating the Loan Commitment on behalf of Brauser and BRE. On November 13, 2003, Meecorp forwarded Wilkes a second draft of the Loan Commitment ("Draft #2"); Wilkes made handwritten notes on the document and faxed it to Meecorp. (*Id.*) Wilkes's handwritten notes on page 4 state: "Add Gerald Brauser individually, guaranty the balance due of the commitment fee." (*Id.*) On page 7 following the typed line "Mr. Gerald A. Brauser individually" Wilkes wrote "Limited to balance of Commitment Fee due Meecorp." (*Id.*) On page 14, entitled "Schedule C" Wilkes wrote: "Real Estate: Parcel 1: Three (3) Billboard sites located w/in (sic) Parcel 2, with all rights of access and use thereof including, any improvements thereto, and leasehold interests." (*Id.*)

---

[2] Salmonson's official title at Outdoor Digital, LLC is unknown.

On November 18, 2003, Brauser received a third draft of the Loan Commitment ("Draft #3") from Meecorp. (Trial Ex. M-25). Draft #3 required Brauser to pay a non-refundable Loan Commitment fee of $600,000 with $200,000 to be paid upon signing the Loan Commitment, and the balance due at the loan closing.[3] (*Id.*)

On November 21, 2003, M. Edrei, Managing Director of Meecorp, emailed Wilkes confirming their agreement that "Gerald Brauser will only guaranty payment of the balance of the Commitment Fee . . ." (Trial Ex. M-11). On November 22, 2003, M. Edrei emailed Wilkes again, asking him to "[p]lease send [his] proposed Collateral Schedule ("Schedule C") and the list of guarantors to me as early as possible Monday." (Trial Ex. M-14).

On November 26, 2003, a fourth draft of the Loan Commitment (Draft #4), with Schedule C attached, was prepared by Meecorp and marked "Final." (Trial Ex. M-10). The guaranty language on the first page states: "Gerald Brauser . . . Limited to obligation for and on behalf of Outdoor Digital, LLC to Lender and for the balance of the Commitment Fee stipulated herein." (*Id.*) On page 4, Wilkes's handwritten notes state: "Add Gerald A. Brauser individually, guaranty the balance due of the commitment fee." (*Id*. at 4.) On page 7, following the typed line "Gerald A. Brauser, individually" Wilkes handwrote "as to balance of Commitment Fee Only." (*Id*. at 7.) On page 13, below the typed line "Mr. Gerald A. Brauser, individually," Mr. Wilkes wrote "Limited to balance of Commitment as noted in paragraph on Acceptance of Commitment." (*Id*. at 13.)

On December 1, 2003, M. Edrei and Wilkes marked up a clean version of the first page of Draft #4 ("Final Draft") which was previously revised by Wilkes on November

---

[3] Since Draft #1, the total amount of the Loan decreased from $28,000,000 to $18,000,000. These changes are reflected in Draft #3 (Trial Ex. M-10). Also, the Loan Commitment Fee decreased from $830,000 to

4

26, 2003. M. Edrei handwrote on page 1 "As to Parcel 2" following the word "Lender," and crossed out "comply with obligations hereunder in closing the loan." The Brauser guaranty language on page 1 states: "Limited to obligations for and on behalf of Outdoor Digital, LLC to Lender and for balance of the Commitment Fee stipulated herein. ____ As to Parcel 2." Schedule C appeared on page 14. (Trial Ex. M-25). Both Brauser and Meecorp executed the Final Draft. (*Id*.) Brauser executed signature lines on pages 7 and 13 that state: "Mr. Gerald A. Brauser, individually as limited guarantor, and for payment of the remaining balance of the Commitment Fee." (*Id*. at 7, 13.) Brauser paid the $200,000 initial Loan Commitment Fee payment.

On December 3, 2003, Wilkes sent a copy of the executed Final Draft and a letter to M. Edrei stating that Wilkes anticipated receiving the letter of credit (that would be issued to Outdoor Digital, LLC for the lease payments) soon.[4] (*See* Trial Ex. M-27). On December 5, 2003, Meecorp sent a "Borrower Checklist" to Salmonson that set forth the items needed from Outdoor Digital to close the loan. (Trial Ex. M-29).

On March 26, 2004, Wilkes, Brauser, M. Edrei, D. Edrei, and Salmonson met at Wilkes's office. (Trial Ex. M-36). At the meeting, Salmonson suggested alternative collateral in the form of long-term leases from Coca-Cola and a casino. On April 7, 2004, Meecorp sent an email to Wilkes making it clear that while Meecorp was allowing the borrowers (Brauser, BRE, and Outdoor Digital) to obtain alternative collateral, "the Commitment Letter dated November 18, 2003 is the instrument that drives the progress of the proposed Loan." (Trial Ex. M-36).

On June 7, 2004, M. Edrei wrote a letter to Brauser requesting that he close the

---

600,000.
[4] Brauser received a copy of the letter of December 4, 2003 (Trial Ex. M-25).

5

loan. (Trial Ex. M-37). The loan did not close and Brauser subsequently requested the $225,000 paid in fees (*i.e.* the $25,000 Application Fee and the $200,000 Commitment Fee) be refunded.

## II.     **Procedural History**

On November 30, 2005, BRE filed suit against Defendants in the Circuit Court of the Seventeenth Judicial Circuit in Florida asserting five counts: (1) (Count I) Violation of the Loan Broker Act, FLA. STAT. ANN. § 687.14; (2) (Count II) Restitution; (3) (Count III) Unjust Enrichment; (4) (Count IV) Rescission; and (5) (Count V) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. § 501.201 (2008).

On December 27, 2005, Defendants removed the case to the United States District Court for the District of Florida. On March 9, 2006, Plaintiff amended its complaint to add two counts for violations of: (1) (Count VI) Chapter 494, FLA. ADMIN. CODE ANN. ss. 494.001-494.00295 (2009); and (2) (Count VII) Chapter 494, FLA. ADMIN. CODE ANN. ss. 494.006-494.0077 (2009).

On March 23, 2006, Defendants filed a Counterclaim against BRE and Brauser, individually, alleging breach of contract for failing to comply with the terms of the Loan Commitment. Meecorp claimed damages of: (1) $1.8 million in Exit Fee charges; (2) $2.6 million in Interest, and (3) the unpaid balance of the Commitment Fee - $400,000.

On April 19, 2006, the case was transferred to the United States District Court for the District of New Jersey. On July 25, 2006, Brauser filed a Motion for Partial Summary Judgment seeking dismissal of Third-Party Plaintiffs' counterclaim. On April 30, 2007, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint with prejudice.

On February 4, 2008 this Court granted Defendants' Motion to Dismiss, thereby dismissing: (1) (Count I) - Violation of the Loan Broker Act; (2) (Count II) - Restitution; (3) (Count III) – Unjust Enrichment; (4) (Count IV) – Rescission; and (5) (Count V) - Violation of the FDUTPA. This Court also denied BRE's Motion to Amend and granted Meecorp's Motion for Partial Summary Judgment regarding the $400,000 balance of the Commitment Fee.

On February 20, 2008, Third-Party Plaintiffs filed a Motion for Summary Judgment against Brauser seeking the remaining $400,000 Loan Commitment Fee.

On March 17, 2008 BRE and Brauser filed opposition to the Motion and made a Cross-Motion for Summary Judgment requesting: (1) dismissal of Defendants' Summary Judgment Motion and (2) reconsideration of this Court's February 4, 2008 Order regarding application of New Jersey law.

On September 12, 2008, this Court denied both Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. This Court opined that genuine issues of material fact existed regarding whether: (1) Brauser individually guaranteed the entire Loan Commitment fee; and (2) alleged material changes made to schedule C discharged Brauser's liability.

### III. Findings of Fact/Conclusions of Law

<u>Loan Commitment Fee</u>

In order to be entitled to a judgment on a guarantee, "a plaintiff must demonstrate: 1) execution of the guarantee by the guarantor; 2) the principal obligation and terms of the guarantee; 3) the lender's reliance on the guarantee in extending monies to the borrower; 4) default by the principal obligator; 5) written demand for payment on the

7

guarantee; and 6) failure of the guarantor to pay upon written demand." *United States v. DelGuercia,* 818 F.Supp. 725, 727-28 (D.N.J. 1993).

First, Brauser executed the guarantee on December 1, 2003 and signed two separate signature lines (on pages 7 and 13) that state: "Mr. Gerald A. Brauser, individually as limited guarantor, and for payment of the remaining balance of the Commitment Fee." (Trial Ex. M-25).

Second, the principal obligation and terms of the guarantee were present in the Loan Commitment when Brauser executed it. Page 4 of the Loan Commitment states:

> The commitment and all of its terms and conditions will become effective upon the delivery to [this] office of a signed copy of this commitment, duly accepted by the Borrower, accompanied with the commitment fee installment in the amount of Six Hundred Thousand Dollars ($600,000.00) which is non-refundable and earned . . .

(Trial Ex. M-15).

Page 6 of the Loan Commitment states:

> (payment would be accepted in the following manner) A. Two Hundred Thousand Dollars ($200,000.00) paid at the time this commitment is signed, prior to our due diligence, which shall occur no later than the end of business, Monday, November 24th, 2003, time of the essence
> B. Four Hundred Thousand Dollars ($400,000.00) to be paid at closing.

(*Id.*) Thus, the principal obligation and terms were present at the time of signing.

Third, Meecorp relied on the guarantee in extending BRE the Loan Commitment. The Loan Commitment clearly states Meecorp's expectation to receive $600,000 in exchange for the Loan Commitment. (*See* Trial Ex. M-15 at 4, 6).

Fourth, BRE and Brauser defaulted by failing to close the loan. Although Brauser paid the initial $200,000 of the Loan Commitment fee, Brauser and BRE failed to fulfill

8

the remaining obligations of the Loan Commitment resulting in a default. (Trial Ex. D-13).

Fifth, Meecorp made a written demand for payment of the guarantee. On June 7, 2004, Meecorp faxed Brauser a letter stating: "[Meecorp's] repeated requests to move towards . . . [closing the loan] remain unanswered", and threatening to take "all legal measures available . . . to protect [their] rights in the agreement." (Trial Ex. M-37). Thus, Meecorp made a written demand for payment of the guarantee.

Sixth, Brauser failed to pay the balance of the Loan Commitment Fee upon written demand. Meecorp advised Brauser of his obligations. Meecorp also warned Brauser and BRE of Meecorp's resulting course of action if Brauser and BRE failed to close the loan. Neither Brauser nor BRE complied with the terms of the agreement.

Because (i) Brauser guaranteed the Loan, (ii) the principal obligations and terms of the loan were present when Brauser executed the Loan Commitment, (iii) Meecorp relied on Brauser in extending the Loan Commiment, (vi) Brauser defaulted on the Loan Commitment, (v) Meecorp made a written demand for payment, and (vi) Brauser failed to pay the balance of the Commitment Fee upon written notice to do so, this Court holds that Brauser is individually liable for the balance of the Loan Commitment fee. *United States v. DelGuercia,* 818 F.Supp. 725, 727-28 (D.N.J. 1993).

Validity of Schedule C

"In order to effect a discharge of the guarantor, an alteration or modification of the underlying [agreement] must either injure the guarantor or actually increase the guarantor's risk or liability." *Center 48 Ltd. Partnership v. May Dept. Stores Co*.**,** 810 A.2d 610, 619 (N.J. Super. Ct. App. Div. 2002).

Here, Schedule C remained largely the same throughout negotiations between Meecorp and Brauser. Draft #1 of the Loan Commitment, dated October 21, 2003, contained a version of Schedule C that did not materially change throughout negotiations. (Trial Ex. M-5). Draft #2, faxed and dated November 13, 2003, contained a note on Schedule C which simply stated "what type of evidence." (Trial Ex. M-9).

Wilkes made corrections to Draft #3's Schedule C and faxed the changes to D. Edrei on November 21, 2003. Wilkes wrote on Draft #3: "Real Estate: <u>Parcel 1</u>: Three (3) Billboard sites located w/in (sic) Parcel 2, with all rights of access and use thereof including, any improvements thereto, and leasehold interests." (Trial Ex. M-10).

On November 22, 2003 Wilkes sent an email to M. Edrei that revised Schedule C. (Trial Ex. M-14). The Schedule "C" prepared by Mr. Wilkes identified the collateral, in relevant part, as follows:

> The Real Estate Collateral – Parcel 1. The real property, improvements and all personal property on approximately 32.00 acres . . .
>
> Parcel 2. The real property, improvements and all personal property on or to be constructed upon three (3) parcels location contiguous to and within Parcel 1 of approximately 64 square feet each for the purpose of construction of a pylon for billboard purposes . . . Included therein will be a commitment to lease not more than forty percent (40%) of the available space on the digital billboards to be constructed, accompanied by an acceptable letter of credit that provides for payment of rent of $2,400,000.00 annually, in installments of $200,000.00 per month.

(Trial Ex. M-14). On November 26, 2003, Brauser faxed Draft #4, which contained Wilkes' changes to Draft #3, to D. Edrei. This revised version of "Schedule C" is identical to the "Schedule C" attached to the Final Loan Commitment executed on December 1, 2003. (Trial Ex. M-15).

On December 3, 2003, Wilkes sent a letter to M. Edrei enclosing the Final Loan Commitment containing the original signatures of Brauser. (Trial Ex. M-27). Because the letter of credit pursuant to Schedule C was never sent to Meecorp, Wilkes, Brauser, M. Edrei, and D. Edrei met at Wilkes's office on March 26, 2004. At the meeting, Salmonson suggested alternative collateral in the form of long-term leases from Coca-Cola and a casino.

Brauser and BRE never obtained ownership of the Property nor the collateral set forth in Schedule C. On April 7, 2004, M. Edrei sent an email to Wilkes which stated: "[M. Edrei] would like to reiterate that our Commitment Letter dated November 18, 2003 is the instrument that drives the progress of the proposed Loan. It calls for certain collateral, terms and exit strategies vital to this transaction." (Trial Ex. M-36). In the email, M. Edrei maintained that Billboards were Meecorp's "only tangible exit" and that "Meecorp had no intentions of . . . giving them up." (Trial Ex. M-36). Meecorp never requested any collateral in addition to what Schedule C provided for in the Loan Commitment signed December 1, 2003. The email from M. Edrei emphasized that Meecorp was not seeking anything other than what was stated in Schedule C.

Because changes made by Wilkes' handwritten notes were inconsequential, and although alternative collateral was permitted, but not required, the contract remained the same.[6] This Court holds that Brauser was neither injured nor did his liability increase because of alleged changes to Schedule C. Thus, this Court finds Brauser is individually liable for the balance of the Loan Commitment Fee.

## Conclusion

---

[6] Testimony regarding the typographical error as to Parcel 2, by M. Edrei was credible. This typographical error did not alter Brauser's obligation to pay the loan commitment fee in any manner.

For these foregoing reasons, this Court holds that Brauser is individually liable for the entire balance of the Loan Commitment Fee.

s/Susan D. Wigenton, U.S.D.J.