<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRAUSER REAL ESTATE, LLC, | : | |
| | : | Civil Action No. 06-cv-01816 (SDW) |
| Plaintiff, | : | |
| v. | : | |
| | : | **OPINION** |
| MEECORP CAPITAL MARKETS, LLC, | : | |
| MICHAEL EDREI and DANIEL EDREI, | : | |
| Defendant, | : | March 30, 2012 |
| v. | : | |
| GERALD BRAUSER, | : | |
| Third-Party Defendant: | : | |

**WIGENTON, District Judge**

Before the Court is the motion of defendants, Meecorp Capital Markets, LLC ("Meecorp"), Michael Edrei and Daniel Edrei (collectively, "Defendants"), for an order determining that this Court has subject matter jurisdiction over the dispute ("Motion") involving plaintiff, Brauser Real Estate, LLC ("Brauser LLC") and third-party defendant, Gerald Brauser (collectively, "Plaintiffs").

This Court, having considered the parties' submissions, decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court **GRANTS** Defendants' Motion.

1

**PROCEDURAL HISTORY**[1]

On November 30, 2005, Brauser LLC filed its complaint against Defendants in the Circuit Court of the Seventeenth Judicial Circuit in Florida. (Compl.) This complaint was later amended on March 26, 2006. The First Amended Complaint ("Am. Compl.") concerned a loan commitment letter issued by Defendants to Brauser LLC. (Am. Compl. ¶¶ 7-16.) Brauser LLC sought financing for a large commercial property in Broward County, Florida ("Property"), and received a letter of interest from Defendants in October 2003. (*Id.* ¶¶ 7-8.) Following negotiations, Defendants forwarded a commitment for a $20,000,000 loan on the Property to Brauser LLC on November 18, 2003. (*Id.* ¶¶ 11, 13.) Brauser LLC asserts that Defendants never provided the loan although Brauser LLC paid a total of $225,000 to Defendants pursuant to the letter of interest and loan commitment. (*Id.* ¶¶ 10, 15-16.) Defendants filed a counterclaim against Brauser LLC and Gerald Brauser individually, alleging breach of contract for failure to comply with the terms of the loan commitment. (Defs.' Answer to Am. Compl. 10-11.)

On December 23, 2005, Defendants filed a notice of removal ("Notice") based on diversity of citizenship which removed the matter to the United States District Court for the Southern District of Florida. (Not. Remv.) The Notice set forth the citizenship of Defendants and Brauser LLC. (*Id.* ¶ 4.) Specifically, the Notice stated that Gerald Brauser, a Florida citizen, is the sole member of Brauser LLC. (*Id.* ¶ 4(b).) In addition, the Notice stated that Meecorp is a company incorporated in New Jersey with its principal place of business in New Jersey and Defendants Michael Edrei and Daniel Edrei are citizens of New Jersey. (*Id.* ¶ 4(c)-(d).) The Notice also indicated that the amount in controversy in this case exceeded $75,000. (*Id.* ¶ 4(e).)

---

[1] The relevant facts have been reviewed and documented in the submissions before this Court, including the relevant certifications and affidavits, as well as during trial. As such, only a brief review is provided.

However, the Notice failed to provide citizenship of the nonparty members of Meecorp. (*Id.* ¶ 4.)

In April 2006, the case was transferred to this Court in the District of New Jersey. (Apr. 11, 2006 Transfer Order.) On February 4, 2008, this Court dismissed Brauser LLC's Amended Complaint. (Feb. 4, 2008 Order.) On August 3, 2009, following a bench trial before this Court,[2] Gerald Brauser was found individually liable to Defendants for the entire balance of the $400,000 loan commitment fee. (Aug. 3, 2009 Order.) Gerald Brauser appealed to the Third Circuit. Subsequently, the Third Circuit sent a letter to counsel on July 29, 2010, inquiring into the basis for the diversity of citizenship of the parties when the case was removed from state court to federal court. (Certification of Robert L. Ritter, Esq. Mar. 31, 2011 ("Ritter Cert.") Ex. C.) Specifically, the Third Circuit noted that the Notice did not provide the citizenship of all of the members of Meecorp. (*Id.*)

In response to the letter, Defendants submitted affidavits to the Third Circuit to demonstrate that the United States District Court for the Southern District of Florida had subject matter jurisdiction when the Complaint was filed in November 2005. (Ritter Cert. Ex. J-L.) The affidavits provided the following: Meecorp is a New Jersey Limited Liability Company. (Certification of Michael Edrei Mar. 29, 2011 ("Edrei Cert.") ¶ 1); the sole member of Meecorp is Meecorp Group, LLC, a New Jersey Limited Liability Company (*id.* at ¶¶ 2-3); and the members of Meecorp Group, LLC were Michael Edrei, Mary Edrei, Sharon Edrei, and Daniel Edrei at the time the complaint was filed in state court (and when the case was removed to federal court). (*Id.* at ¶ 4.) Defendants' affidavits also provided that Michael Edrei, Mary Edrei, and Daniel Edrei were citizens of New Jersey and Sharon Edrei was a citizen of California in 2005. (Ritter Cert. Ex. J-L.)

---

[2] During trial, this Court had the opportunity to hear testimony and make credibility determinations.

3

Gerald Brauser also filed two affidavits in response to the Third Circuit's letter stating that Kenneth Mooney ("Mooney") and Scott Heller ("Heller") were both members of Brauser LLC, and were citizens of New York during the period in question. (Ritter Cert. Ex. M, N.) Gerald Brauser had previously testified that he was the only member of Brauser LLC. (*Id*. Ex. E, at 10:20-11:23; Ex. H, at 12:20-13:3.) On September 15, 2010, the Third Circuit remanded the case to this Court to determine if this Court had subject matter jurisdiction when the case was removed to federal court. (Sept. 15, 2010 Order.) The parties engaged in additional discovery. During discovery, Gerald Brauser produced copies of two letters dated November 23, 2005, stating that Mooney and Heller were each given a ten percent interest in Brauser LLC. (Ritter Cert. Ex. O-P.) In addition, during his deposition on February 14, 2011, Gerald Brauser stated that his son, Steven Brauser is also a member of Brauser LLC. (*Id.* Ex. S, at 11:16-12:25.) Gerald Brauser's counsel also stated at the deposition that Steven Brauser was a citizen of California in 2005. (*Id.* ¶ 5.) On March 31, 2011, Defendants filed the instant Motion for an order determining that the court has subject matter jurisdiction over this dispute. (*See* Defs.' Br.)

**LEGAL STANDARD**

The issue of subject matter jurisdiction may be raised at any stage of the litigation. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). Where the issue of diversity jurisdiction arises following removal of the case to a federal forum, the defendant bears the burden of proving the statutory requirements for diversity jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

District courts have original jurisdiction of all civil actions pursuant to 28 U.S.C. § 1332 where the amount in controversy exceeds $75,000, excluding interest, and the dispute is between citizens of different states. 28 U.S.C. § 1332(a). Further, the Supreme Court has interpreted 28

U.S.C. § 1332 to require complete diversity at the time the suit is filed. *Strawbridge v. Curtiss*, 3 Cranch 267 (1806). To satisfy the requirement of complete diversity, none of the plaintiffs may be a citizen of the same state as any of the defendants. 28 U.S.C. § 1332; *State Farm Fire & Cas. Co.*, 386 U.S. at 531. The defendant may remove an action to federal court where a plaintiff files a suit in state court if the federal court would have had original jurisdiction based on diversity of citizenship and the defendant is not a citizen of the state where the action was brought. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). When seeking removal of an action based on diversity of citizenship, the defendant is not required "to negate the existence of a potential defendant whose presence in the action would destroy diversity." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005). "A natural person is deemed to be a citizen of the state where he is domiciled. . . .a partnership, as an unincorporated entity, takes on the citizenship of each of its partners." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (citing *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008). For purposes of diversity jurisdiction, the citizenship of a limited liability company (or LLC) is determined by the citizenship of its members. *Zambelli*, 592 F.3d at 420; *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004).

Federal diversity jurisdiction depends on the citizenship of the parties at the time the suit is filed. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003). Once diversity jurisdiction is established, the subsequent appearance of a nondiverse party does not divest the court of jurisdiction. *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). Similarly, a change in domicile by one of the parties does not divest a federal court of jurisdiction if the requirement of complete diversity was met when the suit was filed. *Rosado v. Wyman*, 397 U.S.

397, 405 (1970). A district court's error in failing to remand a case that was improperly removed is not fatal to the ensuing adjudication if the requirement of complete diversity is satisfied at the time the judgment is entered. *Caterpillar, Inc.*, 519 U.S. at 64.

**DISCUSSION**

Diversity for Subject Matter Jurisdiction

This matter comes before this Court on Defendants' Motion for an order determining that this Court has subject matter jurisdiction over this dispute. In this context, the requested review is functionally similar to that of a court deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). As such, the law regarding 12(b)(1) motions is applicable to this case. *See Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999) ("Consideration of a *Rule 12(b)(1) jurisdiction-type motion* need not be so limited. Conflicting written and oral evidence may be considered and a court may decide for itself the factual issues which determine jurisdiction." *Id*. at 428 (emphasis added) (internal citation omitted).

"[A] district court acting under Rule 12(b)(1) may independently evaluate the evidence regarding disputes over jurisdictional facts, rather than assuming that the plaintiff's allegations are true." *CNA v. U.S.*, 535 F.3d 132, 140 (3d Cir. 2008). When a facial attack is made under 12(b)(1), "the court may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). However, "when [a defendant is] factually attacking the plaintiff's jurisdictional allegations as set forth in the complaint . . . the 'court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id*. (quoting *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In

addition, when the question of subject matter jurisdiction is related to certain factual issues a district court is "not confined to the allegations in the complaint . . . and can look beyond the pleadings to decide factual matters relating to jurisdiction." *Cestonaro v. U.S.*, 211 F.3d 749, 752 (3d Cir. 2000).

This case meets the amount in controversy requirements under 28 U.S.C. § 1332 for this Court to have original jurisdiction. 28 U.S.C. § 1332(a). As stated, 28 U.S.C. § 1332 also requires there to be complete diversity at the time the suit is filed. *Id*. For purposes of diversity jurisdiction, the citizenship of an LLC is determined by the citizenship of its members. *Zambelli*, 592 F.3d at 420 (dismissing a dispensable party, curing jurisdictional defect, and restoring complete diversity in case involving an LLC); *GMAC Commercial Credit LLC*, 357 F.3d at 829; *Cosgrove*, 150 F.3d at 731.

In the instant matter, if the citizenship of the members of Meecorp and Brauser LLC are as currently asserted, with both Meecorp and Brauser LLC having a member in California,[3] then there would not be complete diversity of the parties and this Court would not have jurisdiction. This Court has the authority to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Iwanowa*, 67 F. Supp. 2d at 438 (quoting *Mortensen*, 549 F.2d at 891).[4] Therefore, the Court may evaluate the validity of Gerald Brauser's claims regarding members of Brauser LLC, and the alleged residence of those members in New York and California. The convenient citizenship assertions made by Plaintiffs regarding Brauser LLC at different stages of this litigation are at best, highly questionable. Before the Third Circuit inquired about the jurisdictional issues, Gerald Brauser testified on multiple occasions that he was the sole member

---

[3] This Court is satisfied at this juncture that there is not a salient issue regarding members of Meecorp being citizens of New York during the relevant time period to defeat diversity.

[4] This Court has authority to make "factual findings which are decisive to the issue of jurisdiction." *See CNA,* 535 F.3d at 139.

of Brauser LLC. (Ritter Cert. Ex. E, Tr. Dec. 18, 2006 Gerald Brauser Dep. 10:20-11:23; Ex. H, Tr. Dec. 9, 2009 Gerald Brauser Dep. 12:20-13:3.) However, when subject matter jurisdiction became an issue before the Third Circuit, Gerald Brauser changed his earlier testimony to add that Brauser LLC had members who were citizens of New York. (Ritter Cert. Ex. O-P.) When it became apparent that there were no members of Meecorp residing in New York in the relevant period of 2005, Gerald Brauser conveniently "recalled" yet another member who, by virtue of his residence, was capable of defeating diversity. (*See id.* ¶ 5.)

In addition, Gerald Brauser did not produce any documentation regarding the fifteen percent interest in Brauser LLC that his son Steven Brauser allegedly received. (Ritter Cert. Ex. BB, Tr. Mar. 9, 2011 Steven Brauser Dep. 56:15-19.) Steven Brauser also testified that he had "perhaps four or five conversations" with his father regarding him moving to Florida, including at least two conversations discussing Brauser LLC relevant to Steven Brauser's claimed interest. (*See id*. at 63:21-64:18.) However, Gerald Brauser claimed to have no recollection of these conversations despite being specifically asked about the ownership and members of Brauser LLC. (*See* Ritter Cert. Ex. E, at 10:20-11:23; Ex. H, at 12:20-13:3.)

At the February 14, 2011 deposition of Gerald Brauser, he testified that either the computer broke or he threw out the laptop on which he allegedly composed the two letters to Heller and Mooney that gave them an interest in Brauser LLC. (*See* Ritter Cert., Ex. S, Tr. Feb. 14, 2011 Gerald Brauser Dep. 42:7-44:2.) Originals of the letters were not produced, and copies of the letters were only produced after remand, subsequent to additional discovery. (*See* Defs.' Br. 11; Ritter Cert. ¶ 3, Ex. O, P.) Further, in February 2011, Gerald Brauser also testified that the copies of these letters were found in his office in Florida. (*See* Ritter Cert., Ex. S, at 44:3-45:25.) These documents, if available, and if genuine should have been produced much earlier in

this litigation prior to trial and depositions, as they are responsive to discovery requests and deposition inquiries. While Defendants did submit an incorrect certification as to the citizenship of Meecorp and are at fault for that omission, Brauser LLC and Gerald Brauser were still required to accurately provide responses, information, and testimony pertaining to the citizenship of Brauser LLC during discovery. Brauser LLC and Gerald Brauser essentially asks this Court to accept that the failure to provide accurate testimony and responses to discovery were merely the result of Gerald Brauser's unsophisticated misunderstanding of how members of an LLC are defined and identified.[5] Given the history and circumstances of this case, including the record before this Court, and this Court's assessment of the credibility of Gerald Brauser when he testified at trial, this Court does not find this assertion credible or acceptable.

The letters to Heller and Mooney were allegedly written within a week of Brauser LLC filing the Florida state court complaint in this matter.[6] (*See* Ritter Cert. Ex. A, at 6, O, and P.) Steven Brauser filed a certification and there is testimony that he was a resident of California during the relevant time period and that his father gave him an interest in Brauser LLC. (*See* Ritter Cert. Ex. S, at 3:25-6:11, 12:1-7.) Supporting documentation to this effect is lacking. The fact that his son had an interest in Brauser LLC is a piece of information that Gerald Brauser obtained or was reminded of only after his attorney suggested he ask Steven Brauser if he was a member.[7] (*See* Ritter Cert. Ex. S, at 11:11-13:18.) Overall, there are several assertions regarding the citizenship of the members of Brauser LLC that appear to be solely directed at

---

[5] Plaintiffs, citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), argue that a defendant making an accusation of fraud with regard to jurisdiction has a heavy burden of proof. (Pl.'s Opp'n Br. 7.) However, the case they rely on focuses on fraudulent joinder and does not address certain nuances of the instant matter. *See Boyer*, 913 F.2d at 111.

[6] Notably, at that point Brauser LLC was not engaged in any other deals and the property it was going to purchase was obtained via another company formed by Gerald Brauser. (Def.'s Br. 18; Ritter Cert. Ex. H, at 16:18-17:2, Ex. Z.)

[7] Steven Brauser allegedly received the interest in Brauser LLC because he was to be the urgent care doctor for the truck stop in Florida for Brauser LLC. (*See* Ritter Cert. Ex. S, at 12:1-7, 13:13-18.)

avoiding jurisdiction by this Court, rather than a genuine reflection of the circumstances for the relevant time periods.

      a. Judicial Estoppel

Pursuant to the doctrine of judicial estoppel, when a party has asserted or assumed a particular position in a legal proceeding, he or she cannot assume a contrary position simply because that party's interests have changed, especially if the opposing party who acquiesced to the previous position would be prejudiced. *New Hampshire v. Maine*, 532 U.S. 742, 742-43 (2001). The doctrine prohibits "parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 743.

The Supreme Court has acknowledged that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle." *New Hampshire v. Maine*, 532 U.S. at 750 (internal citations omitted) ("Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion.") "In such circumstances, employment of equitable estoppel is required to preserve the integrity of the earlier proceedings." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 418 (3d Cir. 1988). The Third Circuit has set out three distinct factors to consider when making a determination regarding the application of the judicial estoppel doctrine.

> Our Court's decisions instruct that judicial estoppel has three threshold requirements: first, the party in question must have adopted irreconcilably inconsistent positions; second, the party must have adopted these positions in "bad faith"; and third, there must be a showing that judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient.

*Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186, n. 5 (3d Cir. 2008) (citing *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003)).

Defendants assert that judicial estoppel is appropriate in this case because Gerald Brauser's statements regarding the membership of Brauser LLC meet all of the elements set out above and that Gerald Brauser's testimony regarding the newly introduced members of Brauser LLC is a sham.[8] (Defs.' Br. 28-34.)

First, to satisfy the test for judicial estoppel, this Court must consider whether Gerald Brauser, in changing his statement as to the members in his company, adopted irreconcilably inconsistent positions. *See Chao*, 517 F.3d at 186, n. 5; *In re Chambers Dev. Co., Inc.*, 148 F.3d 214, 229 (3d. Cir. 1998) ("The party asserting the estoppel is not required to demonstrate detrimental reliance upon the prior representation. . . . the party to be estopped need not have benefited from its earlier position.") Brauser LLC argues that Gerald Brauser's statements are not inconsistent, but rather they merely "appear to be inconsistent in a vacuum." (Pl.'s Opp'n Br. 18.) Brauser LLC bolsters this assertion by arguing that Gerald Brauser never had a clear understanding of the legal term "member" and therefore did not understand the questions he was asked, and that "Gerald Brauser is not nearly as sophisticated a person as Meecorp would have this Court believe." (*Id*. at 13, 17-18.) This Court does not find this argument to be credible. Gerald Brauser, a well-versed businessman, stated that he was the only member of Brauser LLC on multiple occasions. (*See* Defs.' Br. 5, 6, 8; Ritter Cert., Ex. H.) He also did not produce any of the documents or records showing other members of Brauser LLC in response to the parties' stipulation in November 2009 regarding records to be admitted at trial. (*See* Defs.' Br. 6; Ritter Cert. Ex. F.) While Gerald Brauser is in his "mid-eighties", just a few years ago he was working on the business transaction that is at the heart of this matter and purported to be doing so on his

---

[8] This Court has considered Plaintiffs' arguments that judicial estoppel should not apply in this matter because Meecorp should be deemed to have "unclean hands," as Meecorp submitted an inaccurate certification to the Court and did not document the citizenship of its members, including Sharon Edrei of California. (*See* Pl.'s Opp'n Br. 8-9.) However, Meecorp's error does not appear to rise to the level of "unclean hands."

own as the sole member of Brauser LLC. (*See* Pl.'s Opp'n Br. 16.) It was only after the Third Circuit raised the question of diversity, that Gerald Brauser revisited his understanding of what constituted a "member" and conveniently there were three other individuals from two different states who fit the criteria who were never mentioned prior to appeal (via testimony or documentation). Plaintiffs are correct in stating that previously jurisdiction was not an issue in this matter. (Pl.'s Opp'n Br. 11.) However, since jurisdiction has been the focus, Plaintiffs have changed from their initial position of only one person being a member of Brauser LLC – an assertion which clearly limited the scope of discovery at that time and would benefit Plaintiffs.

Furthermore, Gerald Brauser's initial response to the Third Circuit's inquiry was to produce affidavits demonstrating that there were members in only Florida and New York. (*See* Ritter Cert., Ex. M, N.) It was only after it was noted that one of Meecorp's members resided in California, that Gerald Brauser put forth that his son Steven Brauser, a California resident, was also a member of Brauser LLC. (Ritter Cert. ¶ 5.) This Court had the benefit of presiding over the trial in this matter and had the opportunity to make credibility determinations at that time. These evolving positions reflect inconsistencies that this Court finds difficult to conclude resulted from genuine mistake or misunderstanding.

Second, it is arguable that Gerald Brauser adopted these inconsistent positions in bad faith. It is unclear whether Gerald Brauser initially reported that he was a sole member for his own benefit in "bad faith" at the beginning of this litigation. *See Chao*, 517 F.3d at 186, n. 5; *but see In re Chambers Dev. Co., Inc.*, 148 F.3d 214, 229 (3d. Cir. 1998). What is clear is that it is greatly to his benefit to alter that position at this time. Notably, it was only after Defendants' initial incorrect certification had to be updated that there was any mention of changes to the information Gerald Brauser provided.

Brauser LLC asserts that "there's not one shred of evidence of bad faith on the part of Gerald Brauser." (Pl.'s Opp'n Br. 21.)  However, Gerald Brauser's statements were inconsistent and timed perfectly to destroy diversity, only after the Third Circuit's jurisdiction inquiry.  *See generally Shire Labs., Inc. v. Corepharma, LLC*, 2008 WL 4822186 *8 (D.N.J. 2008) (finding that a claim of "surprise discovery" was not credible, in "bad faith," and that the party in question "appears to have made a tactical decision early in this litigation to attempt to forestall a judgment.")*; Krystal Cadillac-Oldsmobile GMC Truck, Inc.*, 337 F.3d at 321 ("[A] rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose.")  Judicial estoppel "is designed to prevent litigants from playing fast and loose with the courts." *In re Chambers Dev. Co., Inc.*, 148 F.3d at 229 (citing *Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir.1996)); *see also Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953).

Gerald Brauser has revised his position on the members of Brauser LLC (not just their citizenship) not once, but twice, apparently in response to the evolution of the case.  Based on the record before this Court, Gerald Brauser may have been "playing fast and loose with the courts" as opposed to Black's Law Dictionary as Plaintiff's contend.   It appears that Plaintiffs are taking advantage of "the essential integrity of the judicial process." (*See* Pl.'s Opp'n Br. 19.)  *In re Chambers Dev. Co., Inc.*, 148 F.3d at 229; *Scarano*, 203 F.2d at 513.  This Court is very aware that an aggravating factor, "and not mere inconsistency," is necessary for the application of judicial estoppel.  *See Chao*, 517 F.3d at 186, n. 5.    Here, that requirement has been met.

The final step in this analysis requires a determination that the doctrine of "judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient."  *Chao*,

13

517 F.3d at 186, n. 5. Defeat of diversity, based on the newly discovered and/or asserted members of Brauser LLC in this matter, would result in erasing a $400,000 judgment following substantial motion practice and a trial. In this instance, Gerald Brauser would "derive an unfair advantage in the absence of estoppel." *Chao*, 517 F.3d at 186, n. 5 (citing *New Hampshire v. Maine*, 532 U.S. at 750-51.) Therefore, as this Court has determined that the positions taken by Gerald Brauser satisfy the three elements of judicial estoppel, that doctrine is applicable in this case.[9]

### b. Diversity at the Time of Judgment

Defendants also make the argument that they are entitled to judgment regardless of diversity at the time of removal under the holding in *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996). In *Caterpillar*, the nondiverse party at the time of removal to federal court settled prior to trial so that at the time judgment was entered in that matter there was complete diversity of the parties. *Caterpillar*, 519 U.S. at 65-66. The Supreme Court in *Caterpillar* stated that "a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered." *Id.* at 64; *see also, Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 575 (2004); *Kaufman v. Allstate New Jersey Ins. Co.,* 561 F.3d 144, 152 (3d Cir. 2009) (discussing exceptions to the time-of-filing jurisdiction analysis in cases where there is a change in the parties).

---

[9] Defendants also argue that the sham affidavit doctrine should apply to this matter. The sham affidavit doctrine prevents a party from "creating" material issues of fact involving conflicting sworn testimony by a party. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251-52 (3d Cir. 2007). However, the instant matter is regarding an issue of jurisdiction and judicial estoppel, not summary judgment. The cases cited by Defendants to link the sham affidavit doctrine to the issues presently before this Court, while helpful, are nonbinding and from other districts. *See e.g., Howard Griggs Trucking, Inc. v. Am. Central Ins. Co.*, 894 F. Supp. 1503 (M.D. Ala. 1995); *Webber v. Shell Oil Co.*, 1975 WL 867 (C.D. Cal. 1975). Additionally, Defendants question the authenticity of the letters from Mooney and Heller. (Def.'s Reply Br. 15-17.) This Court does not address Defendants' authenticity arguments as this Court relies on other bases to come to its conclusion.

At the time of trial and when the judgment in this matter was entered, the only remaining parties were Meecorp and Gerald Brauser, who were diverse. Michael Edrei and Mary Edrei (residing in New Jersey), as well as Daniel Edrei and Sharon Edrei (residing in New York), were diverse from the remaining third-party defendant Gerald Brauser. Although, the circumstances of the instant matter differ in some elements from those in *Caterpillar*, this Court notes that here, the parties that ultimately went to trial were diverse, and the final outcome can be maintained. 519 U.S. 61.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for an order determining that this Court has subject matter jurisdiction over this dispute is **GRANTED**.

s/Susan D. Wigenton, U.S.D.J.

Orig:  Clerk
Cc:    Madeline Cox Arleo, U.S.M.J.
       Parties